IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHARLES MILES, B43017, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 19-cv-709-DWD |
| | ) |
| HEATHER ELLISON, | ) |
| DR. SHAH, | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Charles Miles, an inmate of the Illinois Department of Corrections (IDOC) currently incarcerated at Danville Correctional Center (Danville), brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while at Lawrence Correctional Center (Lawrence). Plaintiff alleges the defendants were deliberately indifferent to a laceration on his lip that required seven stitches. The Defendants' filed a timely Motion for Summary Judgment (Doc. 75), and Plaintiff responded by affidavit (Doc. 78).

PROCEDURAL HISTORY

Plaintiff initiated this case by filing a complaint on June 27, 2019. (Doc. 1). Upon initial review, the Court identified one valid claim:

> Claim 2: Eighth Amendment deliberate indifference to a serious medical need claim against Heather Ellison[1] and Dr. Shah for failing to provide Plaintiff with adequate medical treatment following his attack.

---

[1] Plaintiff initially named "nurse Kate" in his Complaint, but it was discovered later in the litigation that he intended to refer to Heather Ellison.

After review, the Claim was allowed to proceed against Defendants Ellison and Shah. (Doc. 16). A separate claim concerning an alleged failure to protect Plaintiff was dismissed at initial review. On September 23, 2020, the Court adopted a Report and Recommendation denying summary judgment based on failure to exhaust administrative remedies. (Docs. 57, 59). The case proceeded to merits discovery, and the current motion was timely filed.

## FACTS

On the afternoon of January 23, 2019, Plaintiff sustained an injury to his left upper lip. In his complaint, he alleged that he got the injury after he was stabbed several times in the face, head, and neck, by another inmate. (Doc. 1 at 7-8). By contrast, he reported to all medical providers that he saw on January 23 that he got the cut when he fell while shaving in his cell. (Medical Records, Doc. 76-1 at 10; Ellison Aff., Doc. 76-1 at ¶ 14).

At 6p.m., Plaintiff was first seen in the medical unit by a licensed nurse, Haley Kermicle. (Doc. 76-1 at 10). Kermicle documented a small deep hole on his upper lip. He reported no pain, and she observed no bleeding or discharge. (*Id.*). Kermicle noted elevated blood pressure. Kermicle cleaned his wound and informed Registered Nurse, Heather Ellison.

Ellison saw Plaintiff after Kermicle, and she also observed no bleeding or drainage. (Ellison Aff., Doc. 76-1 at ¶15; Medical chart, Doc. 76-1 at 12). Despite these observations, Ellison called Dr. Shah, to inform him of Plaintiff's injury and his elevated blood pressure. Dr. Shah directed that Plaintiff should be kept in the infirmary for observation overnight,

and he should be given Clonidine for his blood pressure. (*Id.* at ¶ 17). Plaintiff received the treatment Shah ordered. (*Id.* at ¶ 21).

Nurses checked on Plaintiff multiple times. At 6:30p.m. on January 23, he did not voice any concerns. (Medical chart, Doc. 76-1 at 17). At 4:20a.m. on January 24, he denied any issues or concerns and appeared alert and cooperative. (*Id.*). At 6:45a.m. on January 24, a nurse in the infirmary received a call from the Warden who indicated that Plaintiff would be transported to the emergency room to examine his injuries because the Warden had learned that the injuries were from a fight. (*Id.*). At 7a.m. on January 24, Plaintiff was resting quietly, and denied any medical needs. (*Id.* at 16). At 7:33a.m., Plaintiff was transported to the emergency room. (*Id.*).

At the emergency room, Plaintiff reported mild pain of a 1 on a scale of 0-10. (Medical records, Doc. 76-1 at 35). The treatment provider discussed Plaintiff's medical needs with the Warden, a supervising doctor in IDOC (Dr. Meeks), and another doctor at the emergency room. (*Id.* at 51). All parties agreed that he should receive sutures and an antibiotic, and that he could be discharged. (*Id.*). Plaintiff's wound was cleaned, he received a numbing agent, and seven sutures were placed. (*Id.* at 57). The procedure was tolerated well. As follow-up care, it was recommended that Plaintiff have a soft diet until sutures were removed, and sutures were to be removed in five days. (*Id.*).

Plaintiff returned to Lawrence around 12:45p.m. on January 24. Dr. Shah averred that upon return Plaintiff received 500mg of Tylenol twice a day, an antibiotic (Augmentin) twice a day for a week, and a soft diet. (Shah Aff., Doc. 76-2 at 4, ¶ 27). At

11:40p.m., Plaintiff reported no issues or concerns to the nurse on duty. (Medical chart, Doc. 76-1 at 18).

On January 27, 2019, Plaintiff was transferred to segregation. (Medical chart, Doc. 76-1 at 20). On January 31, Plaintiff had a follow-up appointment with Nurse Practitioner Stover for removal of his sutures. (*Id.* at 21). He self-reported pain and discomfort in his lip and the back of his head. (*Id.*) He noted that he already had ibuprofen. On February 5, 2019, he saw a nurse on duty who reported that his wound was healing well, and that he had no complaints. (*Id.* at 22).

Dr. Shah averred that he did not chart any encounters with Plaintiff on January 23, 2019, or any date thereafter. (Shah Aff., Doc. 76-2 at 5, ¶ 37). On February 21, 2019, Plaintiff was transferred to Danville. (*Id.* at ¶ 32).

## Conclusions of Law

A. Legal Standards

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted).

Summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence [he] has that would convince a trier of fact to accept [his] version of events." *Johnson v. Cambridge Industries, Inc.*, 325 F.3d 892, 901 (7th Cir. 2003); *Wilson v. Wexford*, 932 F.3d 513, 519 (7th Cir. 2019) (a plaintiff has a burden to submit evidence that would show a deficit in a medical provider's treatment, if a plaintiff has no evidence or expert testimony of his own, and the defendant has medical evidence that the care was appropriate, then judgment in the defendant's favor is appropriate).

To prevail on a claim of deliberate indifference, a prisoner who brings an Eighth Amendment challenge of constitutionally deficient medical care must satisfy a two-part test. *See Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) (citation omitted). The first consideration is whether the prisoner has an "objectively serious medical condition." *Id.* Prevailing on the subjective prong requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *See Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). The plaintiff need not show the individual "literally ignored" his complaint, but that the individual was aware of the condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). Deliberate indifference involves "intentional or reckless conduct, not mere negligence." *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) (*citing Gayton*, 593 F.3d at 620). A choice to pursue an easier or less effective course of treatment, or a non-trivial delay in treating serious pain may also support a claim of deliberate indifference. *Lockett v. Bonson*, 937 F.3d 1016, 1023 (7th Cir. 2019).

B. Analysis

The Defendants argue that Ellison is entitled to summary judgment because she had no reason to question Dr. Shah's treatment recommendations, and Plaintiff did not report that he needed different care than what Kermicle provided, or Shah recommended. The Defendants argue that Shah was not deliberately indifferent for the care provided, or for his alleged failure to see Plaintiff in the infirmary after he returned from the hospital. In opposition to summary judgment, Plaintiff tendered a one-page signed affidavit, wherein he alleged that he was left bleeding in pain for several hours after his injury on January 23, and Ellison and Shah acted with deliberate indifference because they failed to provide adequate treatment. (Doc. 78).

The parties do not argue about the seriousness of the injury, so the Court will assume for purposes of this motion that a laceration that requires seven stitches is sufficient to constitute a serious medical need. Turning to subjective intent, the Court does not find that there is a genuine dispute of material fact about the Defendant Ellison's subjective intent during her treatment of Plaintiff's injury. Ellison saw Plaintiff on a single occasion. At that time, she observed no bleeding or discharge. She consulted the on-call-doctor and formulated a plan to observe Plaintiff overnight. There is no record of Plaintiff complaining to any medical staff overnight that he was in pain. He reported no pain on January 23 at 6:00p.m. and 6:30p.m, and again on January 24 at 4:20a.m. and 7a.m.. Even when Plaintiff arrived at the hospital, he reported pain of only a 1 on a scale of 0 to 10. Based on these facts, there is no evidence to demonstrate that Ellison exhibited deliberate indifference towards Plaintiff's needs. Plaintiff's formulaic statement in his

affidavit, that he received insufficient care is not the sort of specific evidence that can overcome the medical records and Ellison's own sworn affidavit. *See Wilson*, 932 F.3d at 519. The records unequivocally show that during the period Ellison saw Plaintiff, he reported no pain to multiple providers. Thus, there is no evidence that Ellison was deliberately indifferent to Plaintiff's needs.

The same goes for Dr. Shah. There is no evidence that Dr. Shah was informed that Plaintiff was in pain immediately after his injury. Despite the lack of reports of pain, Dr. Shah directed that Plaintiff be held overnight for observation in the infirmary. Ultimately, Plaintiff was sent to the outside hospital because the Warden learned that he had been injured in a fight, and the Warden directed the trip for emergency care. Plaintiff alleges in his complaint that upon return from the emergency room, Dr. Shah should have seen him in the infirmary, but this assertion is unsupported, and does not show that Plaintiff received deficient care. The medical records show that upon return, Plaintiff got ibuprofen, antibiotics, and a soft diet, as recommended by the hospital doctors. The only record evidence of Plaintiff reporting any discomfort is his own self-report to the nurse who removed his stitches on January 31, 2019. There is no evidence that Dr. Shah ever became aware of this complaint, but even if he did, the records show that by February 5, 2019, the wound was healed, and Plaintiff had no complaints. On the records available, Dr. Shah did not act with deliberate indifference.

Plaintiff has not demonstrated a genuine dispute of material fact. His own affidavit, and his statements in his complaint that he was in pain are insufficient to create a genuine dispute when contrasted with the medical records from numerous providers.

*See Wilson*, 932 F.3d at 519. Significantly, the treating physician at the hospital consulted with multiple doctors (both in the Department of Corrections and at the hospital) about the sutures, antibiotics, and soft diet for Plaintiff. All parties agreed that this course of care was appropriate and could be followed by Plaintiff's discharge. The records show that this care was implemented, and that upon return to the facility, Plaintiff got ibuprofen, antibiotics, and a soft diet. His would was healed by February 5, 2019. There is simply no support for Plaintiff's claims that the care he received was deficient. Accordingly, Defendants' Ellison and Shah's Motion for Summary Judgment (Doc. 76) will be granted.

## DISPOSITION

In summary, Defendants' Motion for Summary Judgment (Doc. 76) will be **GRANTED,** and this action is **DISMISSED with prejudice**. In light of this Order, Plaintiff's Motions for Status (Docs. 79, 80) are **DENIED** as **MOOT**. This Motion resolves all outstanding claims in this case against all parties, so the Clerk of Court is **DIRECTED** to close this case. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

Dated: September 29, 2022

_____
DAVID W. DUGAN
United States District Judge